412 So.2d 620 (1982)
YOUNG OIL COMPANY OF LOUISIANA, INC., Plaintiff-Appellant/Appellee,
v.
Shirley DURBIN and Doyle Durbin, Defendants-Appellants/Appellees.
No. 14756.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
*622 Bobby L. Culpepper, Jonesboro, for plaintiff-appellant/appellee.
Brittain & Williams by Joseph Payne Williams, Natchitoches, for third party defendant-appellee.
Broussard, Bolton & Halcomb by Roy S. Halcomb, Jr., Alexandria, for defendants-appellants/appellees.
*623 Before PRICE, FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
In April of 1977, Young Oil Company of Louisiana, Inc., with Roger Young as its president and majority stockholder, opened a self service gas station in Winnfield, Louisiana. About one year later Mr. Young hired Shirley Durbin as a cashier at the station under the supervision of Nancy McQuiddy, the general manager of the station. Late in 1978, Mrs. Durbin was put in charge of the day to day operation of the station. Her duties included opening the station, ordering all merchandise except gasoline, receiving money, closing down the station at night, keeping the car wash running and clean, reading the meters on the gasoline pumps and recording total sales. She was also responsible for inventorying and signing for orders of stock delivered to the station. Assisting Mrs. Durbin in her duties at the station was Bryan Howell, who quit sometime prior to October 1979, (the length of time involved is unclear), and Mrs. Durbin's daughters, Janice and Karen, who worked during the period from January 1979 through October 16, 1979. Also, Becky Holmes, who worked there from late 1978 to early 1979. Although Mr. Young exercised ultimate control over the operations at Winnfield, he was not constantly at the station but rather would stop by randomly every two or three days to see how things were going. All employees as well as Mr. Young had access to the store room and other parts of the station where goods were kept.
Mr. Young had various business interests which kept him occupied. According to his testimony he did not closely supervise the operation of the Winnfield operation, but depended on his manager. However, in 1979 a drop in receipts spurred Mr. Young into more closely monitoring this station. By September 1979, Mr. Young and his wife began in earnest to compare invoices and sales, and Mr. Young spent more time at the station conducting daily inventories. After finding large discrepancies, Mr. Young confronted Mrs. Durbin on October 16, 1979, with the accusation of misappropriation. Mrs. Durbin denied any misappropriation and promptly quit her job with Mr. Young.
On the 8th of November 1979, based on results of inventories taken by Mr. Young, criminal charges were filed against Mrs. Durbin for the theft of $72.00 in cash or merchandise from Young Oil Company of Louisiana "on or about October 16, 1979." Mrs. Durbin was arrested and released upon the posting of bond. She was arraigned and pled not guilty. The charges against her were ultimately dismissed by the District Attorney. The complaint against Mrs. Durbin was signed by "Roger D. Young." His signature was not specified as having been made as president or agent of that corporation.
Mr. Young based his charges against Mrs. Durbin on shortages reflected when he compared the amount of goods purchased by him for resale with the amount listed by Mrs. Durbin on her daily sales computation and the amount remaining in the store. Based on these computations, there was an unexplained deficit of $72.00 for the days of October 12-16 (excluding Sunday, October 14). Similar comparisons from May of 1979 revealed a total discrepancy of at least $10,000.
The receipts at this station when Mrs. Durbin took over as manager were approximately $1,600.00 a month. They consistently fell during her tenure to a low of approximately $900.00 during October 1979. In November, subsequent to her leaving, these receipts rose to approximately $1,250.
On March 18, 1980, Young Oil Company of Louisiana, Inc., filed suit against Shirley Durbin and her husband, Doyle Durbin, alleging that Shirley Durbin had misappropriated the sum of $10,000 and that Shirley Durbin had used the money for community purchases, and therefore Doyle Durbin, as her husband, either knew or should have known of the misappropriations.
The Durbins denied the allegations of Young Oil Company of Louisiana, Inc., and entered a third party demand against Gulf *624 Insurance Company claiming that under a homeowner's policy issued by Gulf to the Durbins, Gulf was obligated to defend the Durbins against the charges made by the plaintiff, and furthermore would be required to indemnify the defendants in the event judgment should be rendered in plaintiff's favor. Additionally, the Durbins filed a reconventional demand against Young Oil Company of Louisiana, Inc., and against Young personally (claiming that in charging Mrs. Durbin with theft, he acted personally and not as the representative of Young Oil Company of Louisiana, Inc.). In so doing, they asserted three theories of recovery: malicious prosecution, defamation and fault. The Durbins also filed a third party demand against Young personally for full indemnification or in the alternative contribution for any sums which Mrs. Durbin might be held liable to Young Oil. This demand was in response to Young Oil's alternative claim that if Mrs. Durbin did not actually take the money then she was responsible in her fiduciary capacity as manager for sums which were lost during her tenureon the theory that Young was Mrs. Durbin's immediate supervisor and therefore had the ultimate responsibility.
A jury trial was held in the case on March 9th and 10th, 1981, and resulted in the following finding on jury interrogatories: (1) there was no shortage, (2) Roger Young was found not to be liable to Shirley Durbin, and (3) Young Oil Company of Louisiana, Inc., and Roger Young were found to be liable to Doyle Durbin in the amount of $5,000. As a result, the trial judge signed a judgment on April 30, 1981, (1) in favor of defendants, Shirley and Doyle Durbin, and against Young Oil Company of Louisiana, Inc., dismissing all demands with prejudice (and likewise dismissing the third party demand against Roger Young), (2) dismissing the reconventional demand of Shirley Durbin against Roger Young and Young Oil Company of Louisiana, Inc., with prejudice, and (3) rendering judgment in favor of Doyle Durbin against Roger Young and Young Oil Company of Louisiana, Inc., in solido, in the amount of $5,000.
Prior to the jury's rendering of judgment, the trial court had granted Gulf Insurance Company's motion for summary judgment, dismissing the defendants' claim against it. Defendants appeal the trial court's ruling sustaining Gulf's motion for summary judgment.
We reverse the judgment in favor of Mr. Durbin and affirm in all other respects, including the sustaining of Gulf Insurance Company's motion for summary judgment.

MRS. DURBIN'S CLAIM FOR DAMAGES
First we consider the finding that Mrs. Durbin was not entitled to damages. Her initial theory of recovery is malicious prosecution. In addressing the question of the burden of proof in suits for malicious prosecution this court in McCoy v. Burns, 379 So.2d 1140 (La.App. 2nd Cir. 1980) cited with approval the following quotation from Robinson v. Rhodes, 300 So.2d 249 (La.App. 2nd Cir. 1974), writs refused 303 So.2d 178:
"... The burden ... is ordinarily upon plaintiff to prove both malice and the absence of probable cause. But the authorities have firmly established the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecution officer has dismissed the charge, or where a grand jury has returned a nobill, there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant...." (Emphasis ours).
The theory that a nolle prosequi provides a presumption of malice is one of long standing in our jurisprudence. See Barrios v. Yoars, 184 So.2d 212 (Orl.App.1938). However, we have some doubt that this action should still be given the same weight as a nobill or a directed verdict. Theoretically each of these should only occur for want of sufficient evidence. However, in this time of crowded dockets and overflowing jails, we are aware that District Attorneys often nolle prosequi for a number of reasons, to include successful diversion, rehabilitation, restitution, or more serious *625 matters on the docket, without consideration by the District Attorney of the actual validity of the evidence. As here, Mr. Young testified he requested the nolle prosequi because of the number of times he had to go to court.
Nevertheless the presumption afforded by a nolle prosequi is rebuttable, requiring a showing the defendant acted on probable cause or without malice. The evidence shows that the miscellaneous receipts dropped significantly during Mrs. Durbin's tenure as manager. She was entirely responsible for all orders (except petroleum products) as well as having responsibility for filling out all daily reports of sales. The findings of shortage were verified by Mrs. Young, who had experience in bookkeeping. They were likewise verified by Mr. Cooper, a Certified Public Accountant.
Mrs. Durbin was charged with the theft of the specific amount of $72.00. This figure was determined after an analysis of inventory of sales records for the period October 12-16 by Mr. and Mrs. Young. The record shows that Mr. Young honestly believed this sum to be missing during this period of time. The record further indicates that in discussing the situation with the judge who issued the warrant Mr. Young discussed the entire history of the shortages and his full knowledge to that point. A criminal charge (either in a warrant or bill of information) often does not reflect the full loss in a theft case for any number of reasons unimportant to this discussion. It is axiomatic that proof of a greater offense is also proof of any lesser and included responsive offense. Thus the inquiry as to probable cause should be based on the entire knowledge of Mr. Young and all of the information communicated to the magistrate. Hibernia Nat. Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980).
We therefore believe that the factors just enumerated render ample probable cause to believe that Mrs. Durbin committed the offense of theft such that the defendant-in-reconvention, Young Oil Company, has successfully rebutted any presumption afforded plaintiff-in-reconvention by the nolle prosequi.
With respect to Mrs. Durbin's claim based on defamation, the essential elements are (1) defamatory words, (2) communication to someone other than the defamed, (3) falsity, (4) actual or implied malice, and (5) resulting injury. Defamation is presumed if one is accused of a crime. Malice is presumed if the statements are defamatory. Therefore the accusation of criminal conduct presumes malice. The burden of proof then shifts to the defendant to rebut this presumption. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2nd Cir. 1975).
The evidence here indicates that Mr. Young discussed this matter with the City Judge prior to obtaining the arrest warrant, and the City Attorney thereafter. Likewise the deputies serving the warrant, as well as those coming in contact with Mrs. Durbin in the arrest process, were aware of the allegations. The statements to the Judge and City Attorney are privileged, constituting a defense. Carter, supra, at p. 522. Likewise, when the defamation results in an arrest, the slander relating to the knowledge of the arrest by those involved with it becomes merged with the arrest and is not actionable if the prosecution is not actionable. Roche v. Aetna Casualty & Surety Co., 303 So.2d 888 (La.App. 1st Cir. 1974).
The only other "communication" with respect to Mrs. Durbin's alleged conduct was the vague evidence with respect to Mrs. McQuiddy's knowledge of the matter, and a discussion Mr. Young had with a truck driver, Mr. Gilcrease. It will be recalled that Mrs. McQuiddy was the person who took over for Mrs. Durbin when she quit. The time and place of the discussion, if any, was not sought. Mrs. McQuiddy remembered nothing concerning an amount being missing. She was told some money had been missing and had the impression from the discussion that Mrs. Durbin had taken it. Similarly, the driver for the gas supplier inquired of Mr. Young where Mrs. *626 Durbin was. Mr. Young responded that he had "let her go for stealing." It appears that in each case the persons Mr. Young discussed the matter with were alone. It is abundantly apparent in the case of the truck driver that he brought the subject up, and it may be that Mrs. McQuiddy also first mentioned it. Both of these persons were familiar with the business. Their curiosity was naturalparticularly Mrs. McQuiddy, who it can be argued, in taking over Mrs. Durbin's position, had a need to know why Mrs. Durbin was no longer present. Considering these circumstances and our finding that Mr. Young had abundant probable cause, we find the presumption of malice has been successfully rebutted as to these two communications.
The final claim for Mrs. Durbin's recovery is in fault. This theory, under these circumstances, is essentially synonymous with the concept of defamation, i.e. defamation is the term used to connote fault in the context of broadcasting an alleged insult. F. Stone, Tort Doctrine, § 172 et seq., in 12, Louisiana Civil Law Treatise (1977).
In summary we find that probable cause existed for the arrest of Mrs. Durbin precluding her recovery under malicious prosecution. We likewise find no recovery in defamation, as the communications involved were either privileged or without malice. Additionally, any claim of "fault" is synonymous with defamation. We therefore affirm the trial court's judgment insofar as it denies recovery to Mrs. Durbin.
YOUNG OIL COMPANY'S CLAIM
Having found probable cause to believe Mrs. Durbin misappropriated, we next consider whether or not Mrs. Durbin is responsible to Young Oil Company for the alleged loss. On interrogatories of a limited nature the jury found there was not a shortage. However, our review of the evidence causes us to believe that the jury was clearly wrong in such a finding. We believe that the evidence is clear that a substantial shortage was shown to exist. Two competent bookkeepers, Mr. Young's wife, as well as Mrs. Robinson, his accountant, testified as to the shortages. In addition Mr. Cooper, a Certified Public Accountant, also found shortages. This testimony is not rebutted.
Thus we have a shortage and probable cause to believe that Mrs. Durbin was responsible therefor. As this is a civil case, plaintiff must prove her responsibility by a "preponderance of the evidence." We are narrowly of the view that the evidence does not reach that standard. Probable cause is not synonymous with "preponderance," being somewhere between "preponderance" and "suspicion."[1] The case against Mrs. Durbin is circumstantial, there being no direct evidence to connect her with a loss or misappropriation. In considering the fashion in which the station was operated there are other explanations for the shortages, which are as plausible as that advanced by the plaintiff. See Charles A. Kaufman Co. v. Gregory, 178 So.2d 300 (La.App. 4th Cir. 1965). The plaintiff has not satisfactorily discharged its burden of proof in this regard.
*627 In addition, there is no conflict with finding that Young Oil Company had probable cause to prosecute, and at the same time finding that Young Oil Company had not proven its claim by a "preponderance of the evidence." Probable cause focuses as much on the reasonable state of mind of Young in bringing the charge as the actual fact. Hibernia Nat. Bank of New Orleans, supra. On the other hand "preponderance" addresses itself to facts actually proven at the trial.
Young Oil Company in a supplemental petition asserted the alternative position that Mrs. Durbin was liable by virtue of her fiduciary capacity as manager of the service station.
Mrs. Durbin was employed to perform specific tasks with her work hours being established by Mr. Young. He exercised ultimate control over her duties. These duties were to operate a cash register, order small amounts of miscellaneous candy, cigarettes, etc., record daily sales, record gasoline sales, receive and sign for orders of goods, and to keep the car wash clean and operating. She did not have the capacity nor authority to set prices, to order petroleum products or to change station operating policy. Mr. Young retained the general and ultimate control of the operation of the service station.
"It is the right of control of the time and physical activities and the existence of a close relationship between the parties which determines if one is a servant." Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), at p. 905. Mrs. Durbin was not sufficiently independent to be the agent/mandatary of Young Oil Company. As his employee (rather than mandatary) the obligations of mandatary for fault or negligence, LSA-C.C.Art. 3003, and the duty to account, LSA-C.C.Art. 3004, do not attach.
However, considering any general fiduciary responsibility as the managerial employee, we view the relationship as very similar to that of the comptroller in Kaufman, supra, who was sued for funds found to be missing after an audit. The shortage was generally accepted and a significant amount of control over proceeds and reports was likewise shown on the part of the defendant. The Court of Appeal adopted the trial court's analysis that in cases of this type the plaintiff's burden is to prove its case by a preponderance of the evidence and found other reasonable hypotheses for a shortageas we likewise just found in this case. See also Crescent Riverboat Pilots' Association v. Heuer, 193 So.2d 276 (La.App. 4th Cir. 1966).
We therefore find that Mrs. Durbin is not responsible for any loss. As an employee rather than an agent/mandatary plaintiff must prove her responsibility by a preponderance of the evidence whether proceeding on a theory of theft or general fiduciary responsibility.
Therefore the trial court judgment dismissing the demands of Young Oil Company against Mrs. Durbin (and correspondingly Mr. Durbin) is affirmed.
AWARD TO MR. DURBIN
Mr. Durbin's judgment of $5,000 is grounded in his claim for defamation. Mr. Durbin was not prosecuted and thus his only claim must be based on the allegations of the petition and the interrogatories of Young Oil Company. These judicial allegations enjoy a qualified privilege, LSA-R.S. 13:3415, which privilege has been limited substantially by Jones v. Davis, 233 So.2d 310 (La.App. 2nd Cir. 1970), writ refused 256 La. 80, 235 So.2d 101. Likewise Mr. Durbin was sued by Young Oil Company only and not by Mr. Young personally, but his judgment is against both, as he reconvened against both. However, one may not reconvene against a party who is not a plaintiff. LSA-C.C.P. Art. 1061. While these factors are damaging to Mr. Durbin's judgment, the concept that an action in defamation based on a plaintiff's petition will not lie until the determination of the original suit is fatal. Lees v. Smith, 363 So.2d 974 (La.App. 3rd Cir. 1978). We supply and sustain an exception of no cause of action as to Mr. Durbin's demands against Mr. Young personally and Young Oil Company. *628 The judgment in favor of Mr. Durbin is therefore reversed.
DUTY OF GULF INSURANCE COMPANY TO DEFEND
The final issue is whether or not Gulf Insurance Company has breached its obligation under the Durbins' homeowner's policy to defend them in this action. It will be recalled that the trial court sustained Gulf Insurance Company's motion for summary judgment.
The insurer's duty to defend is determined by examination of the allegations of the injured plaintiff's petition. If, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy, and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). See also Lees, supra.
Here, the plaintiff's original petition alleges that the defendant Mrs. Durbin is guilty of misappropriation, and that her husband, Doyle Durbin, by virtue of the community of the acquets and gains that existed between them, knew or should have known that the money, which allegedly was spent for community purposes was stolen. Mr. Durbin's only connection to the suit is by virtue of his interest in the community. The allegation is that the funds, if taken by Mrs. Durbin, must have been used for community purposes. Thus this allegation is connected with and inseparable from the allegation of Mrs. Durbin's misappropriation.
For coverage to be found to exist as to the alleged misappropriation, the incident which forms the cause of action for the suit must be one of the defined "occurrences" against which the insured is protected, as enumerated in the policy. The intentional misappropriation is not an "occurrence" against which the insured was protected. See Thibodeaux v. Western World Insurance Co., 391 So.2d 24 (La.App. 3rd Cir. 1980).
Considering Mrs. Durbin's alleged alternative responsibility on a fiduciary basis, this policy contains the usual business pursuit exclusion.[2] Any alleged actions of Mrs. Durbin based on her fiduciary responsibility as a manager (or even as a mandatary/agent) causing a loss to her employer would be in furtherance of a business pursuit and therefore excluded. See Pitre v. Pennsylvania Millers Mutual Insurance Co., 236 So.2d 920 (La.App. 3rd Cir. 1970).
Therefore Gulf Insurance Company owed no duty to defend Mr. or Mrs. Durbin. We affirm the trial court's granting of Gulf Insurance Company's motion for summary judgment, dismissing the Durbins' claim against that company.
CONCLUSION
Finally the Durbins complain that the trial judge erroneously assessed one-half of the trial costs to them, particularly where Mr. Durbin had been successful in his reconvention demand. The trial court has great discretion in the assessment of costs. LSA-C.C.P. Art. 1920. The equal division of costs is particularly appropriate here in view of our action which denies recovery to both the plaintiff and the plaintiffs-in-reconvention.
In summary, the judgment of the trial court sustaining the motion for summary judgment of Gulf Insurance Company is affirmed; the judgment of the trial court rejecting the demands of the plaintiff, Young Oil Company, against Mr. and Mrs. Durbin is affirmed (and likewise the judgment dismissing the Durbins' third party demand against Mr. Young personally); the trial court judgment dismissing the demands of Shirley Durbin as plaintiff-in-reconvention against Young Oil Company and Roger Young personally is affirmed; and the trial court judgment in favor of Doyle Durbin as plaintiff-in-reconvention against Young Oil Company and Roger Young personally in the amount of $5,000, in solido, is *629 reversed and there is judgment dismissing that claim; costs of the appeal and the trial court to be divided equally between Young Oil Company on the one hand, and Shirley and Doyle Durbin on the other.
Reversed in part and affirmed in part.
NOTES
[1] Though probable cause is sometimes discussed in the jurisprudence in terms of "more likely than not," this case excellently illustrates why probable cause does not equal "preponderance." Here, Mrs. Durbin ordered the merchandise and made out the daily sales reports and there were indeed shortages. However, others had access to the merchandise and she was not present on a full-time basis. The case against her is circumstantialthere being other reasonable explanations for the loss not precluded by the evidence.

The best definition of probable cause and discussion thereof of which the author is aware is that advanced in Chapter 1 of J. Shane Creamer's The Law of Arrest, Search and Seizure. There probable cause for arrest is defined as a "combination of facts or apparent facts, viewed through the eyes of an experienced police officer, which would lead a man of reasonable caution to believe that a crime is being or has been committed." (p. 11) The view of the "experienced" or cynical police officer is central to this definition. Surely such an officer would have sufficient reason to believe that Mrs. Durbin committed an offense. Yet, all of the evidence does not reach the "more likely than not" standard of "preponderance."
[2] "[This liability coverage] ... Does not apply: (A)(1) to any business pursuits of an insured, except ... activities which are ordinarily incident to non business pursuits ..."